ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Jeffrey Traurig
Email*:  jtraurig@archerlaw.com*

*Special Litigation Counsel for Howard P. Magaliff*
*Chapter 7 Trustee of Allways East Transportation, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 7 |
| ALLWAYS EAST TRANSPORTATION, INC., | Case No. 16-22589 (RDD) |
| Debtor. | |

-------------------------------------------------------------------x

| | |
|---|---|
| HOWARD P. MAGALIFF, Chapter 7 Trustee of ALLWAYS EAST TRANSPORTATION, INC., | Adv. Pro. No. - |
| Plaintiff, | |
| v. | |
| LORI JACKMAN and LORI JACKMAN VENTURES LTD., | |
| Defendants. | |

-------------------------------------------------------------------x

## COMPLAINT

Howard P. Magaliff, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the

bankruptcy estate of ALLWAYS EAST TRANSPORTATION, INC. (the "Debtor"), by and

through his undersigned counsel, Archer & Greiner, P.C., for his complaint (the "Complaint")

against LORI JACKMAN ("Jackman") and LORI JACKMAN VENTURES LTD. ("Jackman

Ventures" and together, with Jackman, the "Defendants"), respectfully alleges as follows:

## NATURE OF THIS ACTION

1.      This proceeding is brought on behalf of the Debtor's estate seeking judgment against the Defendants for, among other things, the avoidance and recovery of fraudulent transfers, the recovery of property of the Debtor's estate, converted funds, and professional malpractice. This proceeding also seeks an order expunging and disallowing any and all claims filed by the Debtor, if any, against the Debtor.

2.      The Debtor was an owner and operator of a fleet of approximately 300 buses and other transport vehicles that provided transportation services for public and private schools, from pre-K through colleges and universities.

3.      In or about 2012, the owner and president of the Debtor began to transition the operations of the company to her daughter Marlaina Koller who became the vice-president.

4.      Not later than 2012, the company began to suffer financial difficulties as a result of overexpansion, among other reasons, and began to select which payments they would make as they could not satisfy all of their obligations. By January 1, 2013, the Debtor was not satisfying all of its obligations to its creditors, was insolvent and would not be able to meet their obligations as they became due.

5.      The Defendants were the Debtor's bookkeeper and assisted the Debtor with tax preparation. In addition the Defendants collected certain of the Debtor's receivables.

6.      Despite the significant salaries and payments to the Defendants for bookkeeping and tax services, the Debtor's books and records were kept in disarray and contained a plethora of unsubstantiated payments.

7.      Moreover, the Defendants received additional funds from the Debtor for unknown reasons and failed to turnover certain receivables they collected.

8.     Although, the Debtor's books and records were left in shambles requiring the Trustee's professionals to sift through limited financial documentation to understand the Debtor's financial picture and improper, as a result of the efforts made by the Trustee's professionals, it became clear to the Trustee and his professionals that payments were made by the Debtor to benefit or satisfy personal obligations of the Debtor's insiders and others.

9.     For instance, there are numerous charges on the Debtor's books and records and documents provided to the Trustee, that show transfers to, among other entities, casinos, a cemetery, family members and their businesses, restaurants and other entertainment that do not appear to have any connection to the Debtor's business or are not reflected as valid business expenses on the books and records.  In addition, there are large charges for pre-paid credit cards for which the Debtor's books and records don't reflect that the cards were received or used by the Debtor for valid business purposes.

10.     Further, upon information and belief, during the times the Debtor was insolvent, the Debtor operated for the benefit of insiders and their family members, with undocumented lump sum transfers and wages paid to non-working or grossly over compensated family members.

11.     Moreover, the Debtor paid employees in cash and the books and records and documents provided to the Trustee reflect that the Debtor appears to have obtained more cash than necessary to pay the employees but, at this time, notwithstanding the Defendants employment as bookkeeper the records did not reflect the flow of cash.

12.     As such, the Debtor's records and tax filings did not reflect the Debtor's true financial condition.

13.     Further, at the time the Debtor was insolvent and/or as a consequence

whereof the Debtor became insolvent, the Debtor caused or made transfers to the Defendants that are avoidable as fraudulent transfers.

14.     Moreover, receivables and funds that belonged to the Debtor were collected by the Defendants and never turned over.

15.     This adversary proceeding seeks to recover value for the benefit of the Debtor's estate and its creditors.

## PARTIES

### The Debtor, its Principal and Family

16.     On April 28, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York, Case No. 16-22639 (RDD) (the "Court").

17.     The Debtor's principal place of business was New York state.

18.     Judith Koller is the sole-owner of the Debtor.

19.     In or about 2012, Marlaina Koller began to run the Debtor's operations and was the vice president of the Debtor.

20.     Marlaina Koller is the daughter of Judith Koller.

21.     Edward Koller is the son of Judith Koller.

22.     Upon information and belief, Marlaina Koller was married to Vincent Gurgigno during the period January 1, 2013 through at least May 2016.

23.     Frank Caputo is the uncle of Marlaina Koller and Edward Koller.

24.     According to the *Declaration of Marlaina Koller Pursuant to Local Bankruptcy Rule 1007-2 in Support of Debtor's Chapter 11 Petition*, filed with the United States

Bankruptcy Court for the Southern District of the New York (the "Court"), the Debtor operated from the following three leased premises (a) 870 Nepperhan Avenue, Yonkers, New York 10702, (b) 215 Lake Avenue, Yonkers, New York 10703, (c) 38 Route 9, Fishkill, New York, 12524.

### The Trustee

25.　By Motion dated, November 22, 2017, the Office of the United States Trustee (the "UST") sought entry of an order converting the Debtor's chapter 11 case to a case under chapter 7.　In its motion, the UST alleged that the Debtor's operating reports revealed evidence of gross mismanagement in the form of excessive cash withdrawals and multiple suspect Paypal transactions and payments to vendors such as Apple Itunes, GetRentToOwn.com, Outdoor Dogs and clothing stores on Ebay. Moreover, in its motion, the UST alleged that the Debtor was failing to fulfill its fiduciary duty to remit trust funds to the appropriate taxing authorities.

26.　By Order dated December 7, 2017 [Docket No. 338], the Court granted the motion of the United States Trustee and converted the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

27.　The Trustee was appointed as the chapter 7 interim trustee of the Debtor on December 12, 2017, and has accepted his appointment, duly qualified and is acting as the trustee.

### The Defendants

28.　Upon information and belief, the Defendants are Jackman and Jackman Ventures, both with a domicile of Croton Falls, New York.

29.　Jackman owns Jackman Ventures, an accounting firm.

## JURISDICTION AND VENUE

30.     This United States Bankruptcy Court for the Southern District of New York (this "Court") has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334.

31.     This adversary proceeding is brought pursuant to, *inter alia*, 11 U.S.C. §§ 544, 548 and 550, Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and §§ 273, 274, 275, 276, 276-a, 278 and 279 of the New York Debtor and Creditor Law (the "NYDCL").

32.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

33.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

34.     Pursuant to Rule 7008 of the Bankruptcy Rules, the Trustee consents to the entry of final orders or judgment by this Court.

## FACTUAL BACKGROUND

### The Debtor's Insolvency

35.     At least as early as January 1, 2013, the Debtor was insolvent.

36.     At least as early as January 1, 2013, the Debtor was not paying all of its bills and invoices as they came due.

37.     As of the Petition Date, according to the Debtor's schedule of assets and liabilities filed with the Court [Docket No. 46], the Debtor's assets were $3,127,052.10 with liabilities of $8,979,596.28.

38.     According to the Debtor's statement of financial affairs filed with the Court on July 22, 2016, as of the Petition Date, nine court cases were pending against the Debtor, with certain cases dating back to 2012.

39.     The Debtor's claims register reflects more than $23 million of claims were filed against the Debtor.

40.     As such, the Debtor's books and records grossly understated the true financial woes of the Debtor.

41.     The Debtor's insolvency and failure to pay its obligations as they became due was an ongoing problem for years before the Petition Date.

42.     Upon information and belief, any capital the Debtor did have at the end of 2012 was not adequate to operate the business at the time.

43.     Nevertheless, the Debtor sought to expand its business in or about 2012 and left itself without the ability to satisfy its ongoing obligations.

44.     For instance, the Debtor failed to pay an insurance premium to Seneca Insurance Company in 2012.

45.     The failure to pay the insurance premium resulted in the policy being cancelled and a lawsuit being commenced against the Debtor.

46.     The Debtor also defaulted on a settlement agreement with Hudson Valley Bank, N.A. resulting in one or more of the Debtor's bank accounts being restrained in August 2012.

47.     According to the proof of claim filed by the Department of Treasury – Internal Revenue Service, the Debtor owed more than $64,000 on account of FICA taxes not paid for the third quarter of 2012 and additional unpaid pre-petition tax claims in excess of $4,000,000 are asserted by the IRS.

48.     The Debtor also failed to make lease payments under a master lease agreement with Nations Fund I, Inc. resulting in the termination of that agreement in 2014.

49. Notwithstanding the Debtor's financial woes and inability to satisfy its obligations as they became due, upon information and belief, the Debtor's insiders and the Defendants used the Debtor as a personal piggy bank deepening the debtor's insolvency and funneling money out of the Debtor's estate that could have been used to pay the Debtor's legitimate creditors during 2013 through the Petition Date.

**The Transfers to the Defendants**

50. Before the Petition Date and during the time the Debtor was insolvent, the Defendants received transfers in an aggregate amount of not less than $1,212,343.70, plus amounts that may be revealed in discovery (collectively, the "Transfers", individually a "Transfer") to the Defendants.

51. As set forth below transfers in the aggregate amount of $1,097,343.70 are recoverable as fraudulent transfers (the "Fraudulent Transfers").

52. Jackman was an employee of and the accountant for the Debtor.

53. At times, when she was working for the Debtor, Jackman held herself out as a certified public accountant. Jackman has since stated she is not a certified public accountant.

54. Jackman was the Debtor's accountant who, among other things, assisted with preparing the Debtor's taxes.

55. Based upon the Debtor's books and records, it does not appear that the Defendants actually performed the contracted services for the Debtor. As set forth above, the Debtor's records were in disarray with significant transactions not properly recorded. To the extent that the Defendants were employed by the Debtor, the salary provided was greater than the services being provided, was above-market for the labor and was not reasonably equivalent

value.

56. The salary and payments made to the Defendants were not for reasonably equivalent value as Jackman was not a certified public accountant.

57. Jackman only worked for the Debtor part time and the work performed was not commensurate with the salary and payments made to Jackman.

58. Similarly, work performed by Jackman Ventures was not commensurate with the salary and payments made to Jackman Ventures.

59. Jackman, through Jackman Ventures, also invoiced certain of the Debtor's customers for services provided by the Debtor.

60. Jackman did not work full time for the Debtor, yet her salary was based on full-time employment. Further, upon information and belief, Jackman's salary was based off of the understanding that she was a certified public accountant, which she has testified she was not.

**Collections of Accounts Receivable**

61. Upon information and belief, the Defendants received and never turned over to the Debtor, money that belonged to the Debtors.

62. Based on the books and records and documents provided to the Trustee, the Defendants collected at least $326,849 (the "Collected A/R") from the Debtor's customers on account of accounts receivable owed to the Debtor.

63. Based on the books and records and documents provided to the Trustee, although the Defendants received the Collected A/R, the Defendants only turned over $187,110 (net of Paypal charges) to the Debtor.

64. Based on the books and records and documents provided to the Trustee, the Defendants returned $11,325 to the Debtor's customers from the Collected A/R.

65.     As such, the remaining $128,414 (the "A/R Balance") of the Collected A/R was property of the Debtor's estate but was not turned over to the Debtor.

66.     In addition, based on the books and records and documents provided to the Trustee, the Defendants invoiced an additional $411,185 of receivables owed to the Debtor's customers (the "Additional A/R") to be collected by the Defendants to be turned over to the Debtor.

67.     Based on the books and records and documents provided to the Trustee, the Trustee has not identified any of the Additional A/R as having been transferred to the Debtor by the Defendants or any other party.

**Additional Transfers**

68.     Based on the books and records and documents provided to the Trustee, and upon information and belief, the Debtor transferred $300,000 to Jackman's bank account between February 10, 2015 and June 17, 2015.

69.     Based on the books and records and documents provided to the Trustee, $30,000 was returned to the Debtor, however, upon information and belief, $270,000 (the "Remaining Bank Account Transfers") was not returned to the Debtor.

70.     Based on a review of the Defendants' bank account statements provided to the Trustee, $475,929.72 in unaccounted cash deposits (the "Cash Deposits") were made to the Defendants' bank accounts.

71.     The Cash Deposits were made during the period January 2014 through the Petition Date.

72.     After the Petition Date, unaccounted cash deposits to the Defendants' bank accounts were minimal.

73. As a result of the manner in which the Debtor's books and records were maintained, significant cash and cash equivalents that the Debtor had on hand were not tracked.

74. Upon information and belief, the Cash Deposits were the Debtor's funds that the Defendants had access to and transferred into the Defendants' accounts.

**First Cause of Action**
**(Avoidance of Intentional Fraudulent Conveyances**
**Pursuant to 11 U.S.C. § 548(a)(1)(A) )**

75. The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

76. The Fraudulent Transfers were transfers of an interest of the Debtor in property.

77. Certain of the Fraudulent Transfers, in the approximate amount of $992,491.20 were made within two years prior to the Petition Date (the "Two-Year Fraudulent Transfers") to the Defendants.

78. Specifically, approximately (a) $252,000 was paid to Jackman as payroll, (b) $270,000 of the Remaining Bank Account Transfers (c) $35,000 to Jackson Ventures for unknown reasons, and (4) $435,491.20 of the Cash Deposits, was transferred to the Defendants by the Debtor.

79. The Two-Year Fraudulent Transfers were made to or for the benefit of the Defendants.

80. Each of the Two-Year Fraudulent Transfers transferred to or for the benefit of the Defendants were made within two years before the Petition Date.

81. Each of the Two-Year Fraudulent Transfers were made with actual intent to hinder, delay or defraud one or more entities to which the Debtor was or became indebted, on

or after the date that such Two-Year Fraudulent Transfers were made.

82.     None of the Two-Year Fraudulent Transfers provided any benefit to the Debtor.

83.     Knowing that the Debtor was insolvent, the Debtor caused each of the Two-Year Fraudulent Transfers to be made with the actual intent that, by making the Two-Year Fraudulent Transfers, the Debtor would enable the recipient or immediate transferees of the Two-Year Fraudulent Transfers to benefit and profit at the expense of the Debtor's creditors.

84.     Each of the Two-Year Fraudulent Transfers hindered, delayed and defrauded the Debtor's creditors by improperly denying them the benefit of the property transferred.

85.     The Debtor received less than fair consideration or less than a reasonably equivalent value in exchange for each of the Two-Year Fraudulent Transfers .

86.     The Debtor (a) was insolvent on the date each of the Two-Year Fraudulent Transfers were made, or became insolvent as a result of the transfer; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (c) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or (d) made the transfer to or for the benefit of an insider not in the ordinary course of business.

87.     Based upon the foregoing, the Two-Year Fraudulent Transfers made by the Debtor to the Defendants constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a), and the Trustee may recover from the Defendants, for the benefit of the Debtor's estate, the Two-Year Fraudulent Transfers in such amounts as may be determined at trial, that are not

less than the amounts of the Two-Year Fraudulent Transfers as identified herein, as well as any additional amounts of Two-Year Fraudulent Transfers as may be revealed in further discovery.

## Second Cause of Action
### (Avoidance of Constructive Fraudulent Conveyances Pursuant to 11 U.S.C. §§ 548(a)(1)(B))

88.     The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

89.     The Two-Year Fraudulent Transfers were transfers of an interest of the Debtor in property.

90.     The Two-Year Fraudulent Transfers were made to or for the benefit of the Defendants.

91.     The Debtor received less than reasonably equivalent value in exchange for the Two-Year Fraudulent Transfers.

92.     The Debtor (i) was insolvent on the dates of the Two-Year Fraudulent Transfers or became insolvent as a result of the Two-Year Fraudulent Transfers; or (ii) was engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of the Two-Year Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

93.     Upon information and belief, the Defendants may have received additional transfers beyond those set forth herein during the two years before the Petition Date, and the Trustee reserves his right to assert claims to recover such transfers.

94.     Based upon the foregoing, the Two-Year Fraudulent Transfers made by the Debtor to the Defendants constitute avoidable fraudulent transfers pursuant to 11 U.S.C. §

548(a), and the Trustee may recover from the Defendants, for the benefit of the Debtor's estate, the Two-Year Fraudulent Transfers in such amounts as may be determined at trial, that are not less than the amounts of the Two-Year Fraudulent Transfers as identified herein, as well as any additional amounts of Two-Year Fraudulent Transfers as may be revealed in further discovery.

**Third Cause of Action**
**(Avoidance of Fraudulent Conveyances Pursuant to**
**11 U.S.C. § 544(b) and §§ 273, 274, 275, 278 and 279 of the NYDCL)**

95.     The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

96.     All of the Fraudulent Transfers in the amount of $1,097,343.70 were made within six years prior to the Petition Date.

97.     The Fraudulent Transfers did not satisfy obligations of the Debtor and the Debtor received no benefit for making the Fraudulent Transfers, which were made without fair consideration.

98.     The Debtor was rendered insolvent as a result of the Fraudulent Transfers.

99.     The Fraudulent Transfers were made or incurred without fair consideration.

100.     At the time of the Fraudulent Transfers, the Debtor had remaining in its hands after each Fraudulent Transfer an unreasonably small capital.

101.     At the time of the Fraudulent Transfers, the Debtor intended or believed that they would incur debts beyond its ability to pay as they matured.

102.     According to the Debtor's books, records and documents provided to the Trustee, including bank statements, the Defendants received the Fraudulent Transfers from and by the Debtor.

103.    Upon information and belief, and based on the Debtor's books, records and documents provided to the Trustee, the Fraudulent Transfers were made without adequate, or for no, consideration.

104.    Although, the Defendants provided certain services to the Debtors, those services were at rates far in excess of the value of the services provided.

105.    The Debtor's books, records and documents provided to the Trustee show no evidence of an obligation of the Debtor to the Defendants related to the Fraudulent Transfers, other than certain payroll obligations.

106.    Accordingly, pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275, 278 and 279 of the NYDCL, the Fraudulent Transfers may be avoided and recovered to the estate of the Debtor.

107.    Based upon the foregoing, and pursuant to 11 U.S.C. § 544(b), the Trustee may recover from the Defendants, for the benefit of the Debtor's estate, the Fraudulent Transfers in such amounts as may be determined at trial, that are not less than the amounts of the Fraudulent Transfers (less the value of proper payroll), as well as any additional amounts of Fraudulent Transfers as may be revealed in further discovery.

**Fourth Cause of Action**
**(Avoidance of Fraudulent Conveyances Pursuant to**
**11 U.S.C. § 544(b) and §276 of the NYDCL)**

108.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

109.    The Fraudulent Transfers were received by Defendants within six years of the Petition Date.

110.    The Fraudulent Transfers did not satisfy obligations of the Debtor and the

Debtor received little benefit for making the Fraudulent Transfers which were without fair consideration.

111. The Fraudulent Transfers were made with actual intent to hinder, delay or defraud one or more entities to which the Debtor was or became indebted, on or after the date that such Fraudulent Transfers were made

112. Accordingly, pursuant to 11 U.S.C. § 544(b) of the Bankruptcy Code and § 276 of the NYDCL, the Fraudulent Transfers may be avoided and recovered to the estate of the Debtor.

113. Based upon the foregoing, and pursuant to 11 U.S.C. § 544(b), the Trustee may recover from the Defendants, for the benefit of the Debtor's estate, the Fraudulent Transfers in such amounts as may be determined at trial, that are not less than the amounts of the Fraudulent Transfers (less the value of payroll services), as well as any additional amounts of Fraudulent Transfers as may be revealed in further discovery.

**Fifth Cause of Action**
**(Reasonable Attorneys' Fees,**
**Pursuant to § 276-a of the NYDCL )**

114. The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

115. The Defendants are liable to the Trustee for the avoidance and recovery of transfers made with actual intent to hinder, delay, or defraud the Debtor's creditors, pursuant to §276 of the NYDCL.

116. By reason of the foregoing, the Defendants are liable to the Trustee, pursuant to §276-a of the NYDCL, as made applicable herein by 11 U.S.C. §544, for his reasonable attorneys' fees, together with interest, in bringing such actual fraudulent conveyance

action.

117.  Based upon the foregoing, the Trustee seeks judgment against the Defendants in the amount of his reasonable attorneys' fee, plus interest, in an amount to be determined at trial.

**Sixth Cause of Action**
**(Recovery of Transfers Pursuant to 11 U.S.C. § 550)**

118.  The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

119.  Upon information and belief, the Defendants were either the initial or subsequent transferee of the Transfers, and/or the party for whom the Transfers were intended.

120.  Based upon the foregoing, the Defendants are obligated to return the Transfers to the Trustee pursuant to 11 U.S.C. § 550.

**Seventh Cause of Action**
**(Conversion)**

121.  The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

122.  The Debtor had a possessory right and interest to its property, including but not limited to accounts receivable of the Debtor.

123.  As set forth above, the Defendants converted the Debtor's property.

124.  Based on the books and records and documents provided to the Trustee, the Defendants collected the Collected A/R from the Debtor's customers on account of accounts receivable owed to the Debtor.

125.  Based on the books and records and documents provided to the Trustee, although the Defendants received the Collected A/R, the Defendants only turned over certain

amounts to the Debtor.

126.     Based on the books and records and documents provided to the Trustee, the Defendants returned a small amount to the Debtor's customers from the Collected A/R.

127.     As such, the remaining A/R Balance was property of the estate but was not turned over to the Debtor.

128.     In addition, based on the books and records and documents provided to the Trustee, invoiced the Additional A/R for no apparent reason.

129.     Based on the books and records and documents provided to the Trustee, upon information and belief, the Remaining Bank Account Transfers were not returned to the Debtor.

130.     Based on the books and records and documents provided to the Trustee, the Trustee has identified the Additional A/R as being submitted to the Debtor.

131.     The Debtor and its creditors were deprived of the use of the Debtor's rights and property, including the A/R Balance, the Transferred Funds and, to the extent paid to the Defendants, the Additional A/R and the Remaining Bank Account Transfers.

132.     Upon information and belief, the Cash Deposits were the Debtor's property and the Defendants took control of these funds for no value provided to the Debtor.

133.     As a direct and proximate result of this conduct, the Debtor and its creditors have not had the use or benefit of the Debtor's rights and property.

134.     By reason of the above, the Trustee is entitled to an award of compensatory damages, in an amount to be determined at trial.

135.     The Trustee is entitled to judgment and an order directing the Defendants to return to the Debtor, the property or the value thereof, of each converted right or property

including the A/R Balance, the Transferred Funds and, to the extent paid to the Defendants, the Additional A/R, the Remaining Bank Account Transfers and the Cash Deposits.

136.     The Trustee demands the entry of judgment against the Defendants for compensatory damages, special damages and consequential damages to be determined at trial, along with an award of pre-judgment interest and costs, and for such other relief and this Court may deem just and proper.

**Eighth Cause of Action**
**(Turnover of Property of the Estate)**

137.     The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

138.     The Defendants are in possession, custody or control of property, subject to the ownership of the Debtor, that the Trustee may use, sell or lease under 11 U.S.C. § 363.

139.     Pursuant to 11 U.S.C. § 542, the Defendants each have an obligation to deliver to the Debtor, and account for all the Debtor's property in its possession, custody or control, including the A/R Balance, the Transferred Funds and, to the extent paid to the Defendants, the Additional A/R, Remaining Bank Account Transfers and the Cash Deposits.

140.     The Defendants are liable to the Trustee for the return of all the Debtor's property in their respective possession, custody or control, or of the value of that property including the A/R Balance, the Transferred Funds and, to the extent paid to the Defendants, the Additional A/R, the Remaining Bank Account Transfers and the Cash Deposits.

141.     The Defendants are required to deliver to the Trustee, and to provide the Trustee with an accounting of, all of the Debtor's property in their respective possession, custody or control, or of the value of that property.

142.     Based on the foregoing, the Trustee is entitled to an order directing the

Defendants to deliver to the Trustee, and to provide the Trustee with an accounting of, all of the Debtor's property in their possession, custody or control, or the value of that property, including the A/R Balance, the Transferred Funds and, to the extent paid to the Defendants, the Additional A/R, the Remaining Bank Account Transfers, and the Cash Deposits.

## Ninth Cause of Action
### (Professional Malpractice)

143.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

144.    The Defendants held and continue to hold themselves out as professional accountants, qualified to perform accounting services, including audits and reviews in accordance with applicable professional standards.

145.    The Defendants had a duty to use such skill, prudence and diligence as accountants of ordinary skill and capacity commonly possess and exercise in the performance of such services for and on behalf of the Debtor.

146.    The Defendants failed to use such skill, prudence and diligence in the accounting and auditing services it provided to the Debtor.

147.    The Defendants repeatedly breached its duties of care and committed professional malpractice in providing its services and advice to the Debtor.

148.    As a result of submitting false financials prepared by an alleged certified public accountant to vendors and creditors, the Defendants' actions exacerbated and increased the Debtor's losses and misrepresented the Debtor's financial position, causing entities that did business with the Debtor to believe the Debtor's financial condition was better than it was.

149.    As a result of submitting false financials prepared by an alleged certified public accountant to vendors and creditors the Defendants actions exacerbated the Debtor's

losses, caused entities that did business with the Debtor to believe that the Debtor's financial condition was better than reflected on the Debtor's tax returns and increased losses.

150.    Based on the foregoing, and as a direct, proximate result of the Defendants negligence and malpractice, the Debtor has suffered massive damages in an amount to be proven at trial.

**Tenth Cause of Action**
**(Unjust Enrichment)**

151.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

152.    Unjust enrichment exists when (1) a defendant benefits; (2) at another party's expense; and (3) equity and good conscience require restitution.

153.    The benefits that the Defendants received from the Debtor had a value for which the Defendants did not properly compensate the Debtor.

154.    The Debtor did not receive any, or adequate, consideration in exchange for the Transfers.

155.    Upon information and belief, in contrast, the Defendants unfairly benefitted by receiving and retaining the Transfers and have been unjustly enriched thereby, resulting in the Debtor denying amounts rightfully due to their other creditors.

156.    For the foregoing reasons, the Defendants are liable to the Trustee for the return of the Transfers or for the value of transfers.

**Eleventh Cause of Action**
**(Disallowance of Claims**
**Pursuant to 11 U.S.C. § 502(d))**

157.    The Defendants are entities which property is recoverable under 11 U.S.C. § 550.

158.     The Defendants are the initial transferees of the Transfers, or the persons for whose benefit the Transfers were made.

159.     The Defendants have not paid to the Trustee, or previously to the Debtor, the amount of the Transfers and has not turned over to the Trustee, or previously to the Debtor, the property for which the Defendants are liable under 11 U.S.C. § 550.

160.     Pursuant to 11 U.S.C. § 550, any and all claims of the Defendants or any assignee of the Defendants against the Debtor's estate must be disallowed until such time as the Defendants pays to the Trustee all amounts sought herein.

161.     Based upon the foregoing, pursuant to 11 U.S.C. § 502(d), the Trustee is entitled to entry of judgment disallowing, barring and expunging any claims that the Defendants may hold against the Debtor or its estate.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee requests that this Court enter its judgment against the Defendants as follows:

A.     Avoiding the Two-Year Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(A);

B.     Avoiding the Two-Year Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(B);

C.     Avoiding the Fraudulent Transfers pursuant to 11 U.S.C. § 544(b) and §§ 273, 274, 275, 278 and 279 of the NYDCL;

D.     Avoiding the Fraudulent Transfers pursuant to 11 U.S.C. § 544(b) and § 276 of the NYDCL;

E.     Awarding attorneys' fees to the Trustee pursuant to § 276 of the NYDCL;

F. Ordering the Defendant to pay to the Trustee $1,214,343.70, the sum of the Transfers, pursuant to 11 U.S.C. § 550;

G. Awarding the Trustee the return of the Debtor's property and damages resulting from the conversion of the Debtor's assets;

H. Directing the Defendants to turn over the Debtor's property or the value of that property;

I. Awarding the Trustee a money judgment in an amount to be determined at trial but not less than $1,214,343.70, and related costs and expenses including attorneys' fees;

J. Awarding the Trustee the return of each Transfer received, or of which it received the benefit in the amount of the value of that Transfer by which each Defendant was unjustly enriched;

K. Disallowing any and all claims of claims of the Defendant until such time as the Defendant pays to the Trustee all amounts sought herein;

L. Awarding pre-judgment interest as the maximum legal rate running from the date of the Trustee's first demand to return the Transfers until the date judgment is entered against the Defendant;

M. Awarding post-judgment interest at the maximum legal rate from and after the date judgment is entered until payment thereof;

N. Requiring the Defendant to pay the amount of the judgment forthwith; and

O.     Granting the Trustee such further and additional relief as the Court deems

proper.

Dated: New York, New York                    ARCHER & GREINER, P.C.
       December 11, 2018

                                     By:_____ /s/ Jeffrey Traurig_____
                                        Jeffrey Traurig
                                 630 Third Avenue
                                 New York, New York 10017
                                 Tel:   (212) 682-4940
                                 Email: jtraurig@archerlaw.com

                                 *Special Litigation Counsel for*
                                 *Howard P. Magaliff, Chapter 7 Trustee*
                                 *of Allways East Transportation, Inc., Debtor*

215637548v2